UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>LARRY KIRKLAND,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:26-po-29-JEM |

**MEMORANDUM AND ORDER**

This case is before the Court pursuant to 28 U.S.C. § 636(a). Now before the Court are Defendant's Motion to Dismiss [Doc. 10] and Defendant's Motion to Dismiss Count Three on First Amendment Grounds and to Declare Tenn. Code Ann. § 70-4-302(a)(3) Unconstitutional; Request for Certification Under 28 U.S.C. § 2403(b) ("Motion to Dismiss on First Amendment Grounds") [Doc. 11]. The Government filed a Response in Opposition to Defendant's Motions to Dismiss (Docs. 10 & 11) [Doc. 12]. Defendant did not reply.

For the reasons stated below, the Court **DENIES** both Defendant's Motion to Dismiss [**Doc. 10**] and Defendant's Motion to Dismiss on First Amendment Grounds [**Doc. 11**].

## I. BACKGROUND

Defendant Kirkland is charged with three petty offenses: (1) operating a motor vehicle in a non-designated area, in violation of 36 C.F.R. § 261.13 (Violation F0GV002F); (2) disorderly conduct, in violation of 36 C.F.R. § 261.4(b) (Violation F0GV002G); and (3) hunter interference, in violation of Tennessee Code Annotated § 70-4-302, as assimilated by 18 U.S.C. § 13(a) (Violation FALG022P) [Doc. 1].

On May 5, 2026, the Court set Defendant's trial for August 14, 2026. On August 7, 2026, the Court entered a Pretrial Order stating that no motions would be allowed to be filed without leave of Court [Doc. 2 p. 1]. On August 12, 2026, Defendant filed a trial brief in which he asked the Court to dismiss the hunter interference charge, arguing reliance on state law is inappropriate when federal law covers the alleged crime [Doc. 4]. The Government responded in opposition [Doc. 9] and also filed a motion to strike Defendant's trial brief, arguing that Defendant's motion was untimely and without leave of Court [Doc. 6]. Defendant filed no response to the motion to strike.

On August 14, 2026, the scheduled trial date, Defendant, by oral motion, requested leave to file a motion to dismiss the hunter interference charge on the question of whether state law is properly assimilated and to continue the trial so that he could do so. The undersigned found the issue related to the Assimilative Crimes Act to be an issue appropriately raised as a pretrial matter. Out of an abundance of caution and in the interest of adjudicating the issue on the merits, the Court granted leave for Defendant to file a pretrial motion related to the Assimilative Crimes Act. It set a "tight" timeline for briefing given the prejudice to the Government as a result of Defendant's delayed request and rescheduled the trial to November 2, 2026. Defendant thereafter filed his Motion to Dismiss [Doc. 10]. Defendant also filed a the Motion to Dismiss on First Amendment Grounds [Doc. 11]. Both motions challenge the charge for hunter interference, in violation of Tennessee Code Annotated § 70-4-302, as assimilated by 18 U.S.C. § 13(a) (Violation FALG022P). The Government responded in opposition [Doc. 12]. Defendant did not file a reply,

and the time for doing so has expired.[1] E.D. Tenn. L.R. 7.1(a)(3) (permitting a reply brief within seven days of the response).

## II. MOTION TO DISMISS [DOC. 10]

According to Defendant, the "statement of probable cause describes a single sequence of events" for both the hunter interference charge and the disorderly conduct charge:

> [that] a hunter reported that Mr. Kirkland approached him off-road on an ATV while the hunter was actively hunting on National Forest land; that Mr. Kirkland raised his voice and used profanity during the encounter; and that the hunter felt "intimidated" and reported that this was "not his first negative interaction" with Mr. Kirkland.

[Doc. 10 p. 2].[2]

---

[1] Considering the procedural history, the Court treats as abandoned any issues raised in Defendant's trial brief and not in his Motion to Dismiss [*Compare* Docs. 4 and 5 *with* Doc. 10]. And because the Court granted Defendant leave to late-file the motion to dismiss, it **DENIES AS MOOT** the Government's motion to strike the trial brief [Doc. 6].

[2] Tennessee Code Annotated § 70-4-302 provides:

> Any person who performs any of the following commits a Class C misdemeanor:
>
> (1) Interferes with the lawful taking of a wild animal by another with intent to prevent the taking;
>
> . . .
>
> (3) Disturbs another person who is engaged in the lawful taking of a wild animal or who is engaged in the process of taking, with intent to dissuade or otherwise prevent the taking[.]

Tenn. Code Ann. § 70-4-302(a)(1) & (a)(3).

Section 261.4(b) of Title 36 of the Code of Federal Regulations provides:

> The following are prohibited when committed intentionally to cause, or recklessly to create a substantial risk of causing, public alarm, nuisance, jeopardy, or violence:

Defendant argues that the state statute, Tennessee Code Annotated § 70-4-302, is not properly assimilated under the Assimilative Crimes Act, 18 U.S.C. § 13 [*Id.* at 1]. He explains that the same conduct is already charged under 36 C.F.R. § 261.4(b), the disorderly conduct charge [*Id.*]. Defendant contends that the Government "may not use a Tennessee misdemeanor statute to charge [him] a second time, under different elements and a lower bar, for conduct it has already elected to charge federally" [*Id.* at 2].

The Assimilative Crimes Act provides that anyone within the special maritime and territorial jurisdiction of the United States who is "guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment." 18 U.S.C. § 13(a). Its purpose is to "borrow[] state law to fill gaps in the federal criminal law that applies on federal enclaves." *Lewis v. United States*, 523 U.S. 155, 160 (1998).

To determine whether assimilation is appropriate, a court must first ask "[i]s the defendant's 'act or omission . . . made punishable by *any* enactment of Congress.'" *Id.* at 164 (quoting 18 U.S.C. § 13(a)). If the answer is "no," the inquiry ends. *Id.* The parties here do not dispute that Defendant's charged conduct is covered under a federal regulation, and Court agrees the answer is

---

. . .

> (b) Making an utterance or performing an act that is obscene or threatening or that is made or performed in a manner that is likely to inflict injury or incite an immediate breach of peace.

36 C.F.R. § 261.4(b).

"yes." If the answer is "yes," the Court set forth the following test for lower courts to determine whether a state law is properly assimilated:

> [T]he court must ask the further question whether the federal statutes that apply to the "act or omission" preclude application of the state law in question . . . because its application would interfere with the achievement of a federal policy, . . . because the state law would effectively rewrite an offense definition that Congress carefully considered, . . . or because federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue.

*Id.* (internal citations omitted). The central question "is one of legislative intent: Does applicable federal law indicate an intent to punish conduct such as the defendant's to the exclusion of the particular state statute at issue?" *Id.* at 166. Application of this test shows that assimilation of Tennessee Code Annotated § 70-4-302 is proper here.

First, application of the state law would not interfere with achievement of any federal policy. Defendant has not identified how application of the Tennessee hunter interference law would interfere with the achievement of any federal policy, and the Government submits that neither Congress nor the United States Forest Service has adopted a policy about interfering with hunters [*See* Doc. 12 p. 4].

Second, application of the state law would not rewrite any federal offense. That is because, as the Government represents, "there is no federal statute or regulation aimed at hunter interference" [Doc. 12 p. 4]. Defendant asserts that focusing on the absence of a specific federal hunting provision "defines the relevant field too narrowly" [Doc. 10 p. 5]. But, "a substantial difference in the kind of wrongful behavior covered (on the one hand by the state statute, on the other, by federal enactments) will ordinarily indicate a gap for a state statute to fill—unless Congress, through the comprehensiveness of its regulation, or through language revealing a conflicting policy indicates to the contrary in a particular case." *Lewis*, 523 U.S. at 165–66. Here,

such a substantial difference in wrongful behavior is present. The state statute prohibits interference with hunting, while the federal regulation focuses on a breach of the peace causing "public alarm, nuisance, jeopardy, or violence." While, as Defendant suggests, the scope of the federal regulation is broad, it does not purport to be comprehensive. *Compare id.* at 169 (observing that the federal murder statute is comprehensive and "covers all variants of murder").

Finally, federal statutes do not reveal an intent to occupy the field of hunting regulations. Defendant maintains that the only difference between the state statute and the federal regulation is the victim's status as a hunter, which amounts to a difference "of name and definitional language, not [a] difference[] in kind," and which leaves no "gap for a state statute to fill" [Doc. 10 p. 5]. He also argues that the relevant field for the federal regulation is conduct directed at other people while on national lands, not hunting policy, and the absence of hunting-specific language in 36 C.F.R § 261.4(b) "reflects that the regulation was written at the correct level of generality to cover this conduct without regard to the victim's activity at the time" [*Id.*]. But as the Government points out, a review of the subpart of these regulations "demonstrate[s] an intent to let state authorities take the lead in regulating hunting and hunter interactions" [Doc. 12 p. 4 (citing 36 C.F.R. § 261.8(a))]. Indeed, 36 C.F.R. § 261.8(a) expressly incorporates state hunting rules for federal forests, prohibiting "[h]unting, trapping, fishing, catching, molesting, killing, or having in possession any kind of wild animal, bird, or fish, or taking the eggs of any such bird . . . to the extent . . . State law is violated." *See United States v. Reed*, 734 F.3d 881, 889–91 (9th Cir. 2013) (finding assimilation proper where the Code of Federal Regulations "explicitly incorporate[s] all state vehicle and traffic laws, '[u]nless specifically addressed' by the federal regulations").

In addition, where the state law provision focuses on a "narrower (and different) range of conduct . . . [it] argues in favor of assimilation." *Lewis*, 523 U.S. at 169. Defendant contends that

the differences between the state statute and the federal regulation are simply in name and definitional language, but the state law focuses on the hunting-specific conduct of a person, which is narrower and different from general disorderly conduct. Conversely, the federal regulation is not narrow and is found in the subpart titled "General Prohibitions." Defendant argues that "[t]he Forest Service did not need to draft a hunting-specific provision any more than a general breach-of-the-peace regulation needs a hunting subsection to reach a breach of the peace that happens to occur during a hunt" [Doc. 10 p. 5]. But the conduct targeted by the state statute is not simply a breach of the peace that happens to occur during a hunt; the statute targets conduct that specifically intends to interfere with the activity of hunting. In contrast, the federal provision regulates obscene or threatening conduct undertaken with the result of causing "public alarm, nuisance, jeopardy, or violence." *See Reed*, 734 F.3d at 891 (finding assimilation proper where even though there was "some overlap in the type of behavior punished by the subject laws, the differences [were] not trivial and relate[d] to the specific conduct proscribed"); *United States v. Key*, 599 F.3d 469, 479 (5th Cir. 2010) (finding assimilation proper where the state statute "focuses on a far narrower range of conduct than the federal offense"); *United States v. Souza*, 392 F.3d 1050, 1054 (9th Cir. 2004) (finding assimilation proper where federal statute was a "general theft provision," but the state statute covered "specifically the unauthorized entry into a motor vehicle").

Defendant argues that his case is similar to *United States v. Waites*, 198 F.3d 1123 (9th Cir. 2000), and that the Court should find no assimilation for the same reason as the Ninth Circuit did in that case. In *Waites*, the defendant failed to follow a postal employee's directions to leave the premises and was charged under a state trespassing statute prohibiting a person from remaining on premises "after being lawfully directed to [leave] by the person in charge." *Waites*, 198 F.3d at 1129 (quoting Or. Rev. Stat. § 164.205(3)(b)). The applicable federal regulation

prohibited "noncompliance 'with the directions of security force personnel or other authorized individuals'" *Id.* (quoting 39 C.F.R. § 232.1(d)). The Ninth Circuit found that although the specific words differed, both the state statute and the federal regulation "punish approximately the same wrong behavior . . . to-wit, remaining on premises after being lawfully directed to leave," precluding assimilation. *Id.* at 1129–30 (citing *Lewis*, 523 U.S. at 165). As explained above, that is not the case here.

In sum, the federal disorderly conduct regulation does not "indicate an intent to punish" conduct to the exclusion of the Tennessee hunter interference statute. *Lewis*, 523 U.S. at 166. In other words, a gap related to hunter interference remains in federal law that may be filled by the state statute. The Court therefore finds that Tennessee Code Annotated § 70-4-302 is properly assimilated here.

## III. MOTION TO DISMISS ON FIRST AMENDMENT GROUNDS [DOC. 11]

Defendant filed a second motion challenging the hunter interference charge on constitutional grounds, arguing that the violation must be dismissed because Tennessee Code Annotated § 70-4-302(a)(3) violates the First Amendment [Doc. 11 p. 1]. He argues subsection (a)(3) is unconstitutional because it criminalizes conduct based on protected speech and expression [*Id.* at 3]. Defendant asks the Court to declare the statute unconstitutional or, alternatively, "construe the provision narrowly to exclude speech and expressive conduct that does not objectively and materially interfere with lawful hunting" [*Id.* at 1]. Defendant also requests certification to the Tennessee Attorney General and Reporter under 28 U.S.C. § 2403(b) because his motion calls into question the constitutionality of a Tennessee statute affecting the public interest [*Id.*].

The Court finds this motion is untimely. The pretrial motion deadline set by the Court has passed [Doc. 2]. *See* Fed. R. Crim. P. 12(c)(3) (affording district courts broad discretion to set deadlines for filing pretrial motions). While Defendant requested leave to file a pretrial motion related to the Assimilative Crimes Act, Defendant has never requested leave to file a pretrial motion challenging the constitutionality of Tennessee Code Annotated § 70-4-302(a)(3). Nowhere in Defendant's trial brief did Defendant raise the constitutional issue now raised in his Motion to Dismiss on First Amendment Grounds. Nor did he make this request on the date this case was initially set for trial. Rather, his focus was on the Assimilative Crimes Act and the Court granted Defendant leave to file a pretrial motion relating to that issue and that issue only.

The Court also does not find good cause to extend the deadline for filing pretrial motions so as to allow Defendant to make the arguments raised in the Motion to Dismiss on First Amendment Grounds. "Good cause is a flexible standard heavily dependent on the facts of the particular case as found and weighed by the district court in its equitable discretion." *United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010). At a minimum, Defendant must "articulate some legitimate explanation for the failure to timely file." *Id.* The Court must also assess prejudice. *United States v. Trujillo-Molina*, 678 F. App'x 335, 338 (6th Cir. 2017) (citation omitted). *See also* Fed. R. Crim. P. 12(c)(3) advisory committee's notes to 2014 amendment ("The party seeking relief must show 'good cause' for failure to raise a claim by the deadline, a flexible standard that requires consideration of all interests in the particular case.").

Defendant has never requested leave to file the Motion to Dismiss on First Amendment Grounds. And Defendant could have raised the issue earlier in the litigation, including in his trial brief or on the initial trial date when he requested leave to file a pretrial motion related to the Assimilative Crimes Act. Moreover, if the Court were to allow the late filing, the Government,

which stood ready to proceed to trial on August 14, 2026, is further prejudiced. And because Defendant requests certification to the Tennessee Attorney General and Reporter under 28 U.S.C. § 2403(b), allowing Defendant's motion at this junction will further prolong the trial in this case. Additionally, Defendant does not challenge to the constitutionality of subsection (a)(1), and the Government intends to proceed to trial on that theory as well [Doc. 12 p. 11]. *See United States v. LaPointe*, 690 F.3d 434, 440 (6th Cir. 2012) ("Indictments must be phrased in the conjunctive so that society can be confident that the grand jury has found probable cause for all of the alternative theories that go forward. Juries, on the other hand, may convict a defendant on any theory contained in the indictment."); *United States v. Kettles*, 970 F.3d 637, 649 (6th Cir. 2020) (noting that the Sixth Circuit "has repeatedly affirmed '[t]he government's right to charge in the conjunctive and prove in the disjunctive.'" (quoting *LaPointe*, 790 F.3d at 440)).

For these reasons, Defendant's Motion to Dismiss on First Amendment Grounds is **DENIED** as untimely.

## IV. CONCLUSION

Accordingly, and for the reasons explained herein, the Court **DENIES** Defendant's Motion to Dismiss [**Doc. 10**] and Defendant's Motion to Dismiss Count Three on First Amendment Grounds and to Declare Tenn. Code Ann. § 70-4-302(a)(3) Unconstitutional; Request for Certification Under 28 U.S.C. § 2403(b) [**Doc. 11**].

**IT IS SO ORDERED.**

ENTER:

Jill E. McCook
United States Magistrate Judge